STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
DKT. NO. AP-20-34

ANTHONY SMITH,      )
                    )
    Petitioner,     )
                    )
v.                  )      **ORDER REMANDING PETITIONER'S**
                    )      **RULE 80C APPEAL**
SECRETARY OF STATE, )
                    )
    Respondent.     )

Petitioner Anthony Smith appeals pursuant to Rule 80C from the 275-day suspension of his license for failing to submit to and complete a chemical test pursuant to 29-A M.R.S. § 2521(6). The Court has reviewed the parties' briefs, the record on appeal, and the law relevant to this case.[1] It remands the matter to the hearing officer to make additional factual findings. *See* 5 M.R.S. § 11007(4)(B).

## RELEVANT FACTUAL BACKGROUND

The following facts are drawn from the certified record filed with the Court. On the evening of January 18, 2020, Deputy Devin Polizzotti of the Kennebec County Sheriff's Department was investigating an incident unrelated to the matter at issue here. (R. Tab 5, p. 13.) Deputy Polizzotti had received a call about a suspected protection from abuse violation where the parties where at the boat launch on Route 41 in Mount Vernon. (R. Tab 5, p. 13.) Before Deputy

---

[1] Although no party asked for oral argument, the Court requested that counsel for each side appear at a Zoom hearing on May 7, 2021. The Court had questions for the parties about what it viewed as the standard of review which seemed to apply, but by which three different legal standards are superimposed on one another: namely, whether there is substantial evidence supporting a hearing officer's determination, by a preponderance of the evidence, that there was probable cause to believe an individual operated a vehicle while under the influence. The Court also had questions regarding the specific factual findings made by the hearing officer to support her determination that, by a preponderance of the evidence, there was probable cause to believe Petitioner operated a motor vehicle while under the influence in comparison to evidence in the record that might go toward the ultimate determination but not found as fact by the hearing officer. Therefore, the Court offered Petitioner until May 14, 2021, to address these issues further in writing, and Respondent until May 21, 2021, to respond to Petitioner. Each side took the Court up on its offer.

1

Polizzotti pulled into the parking lot for the boat launch, Petitioner pulled into the parking lot ahead of Deputy Polizzotti. (R. Tab 5, p. 13.) Petitioner's vehicle was the only other one in the parking lot which caused Deputy Polizzotti to ask Petitioner if he had seen anything about the incident Deputy Polizzotti was investigating. (R. Tab 5, p. 13.) Deputy Polizzotti did not notice any erratic driving on the way in. (R. Tab 5, p. 20.)

Deputy Polizzotti walked to Petitioner's passenger window to start talking with Petitioner. (R. Tab 5, p. 13.) At that point Deputy Polizzotti noticed that Petitioner's eyes were a little glassy and that he was slurring his speech. (R. Tab 5, p. 13.) Petitioner contended that his eyes were always glassy and his speech always slurred. (R. Tab 5, p. 14.) Deputy Polizzotti requested Petitioner's license and other paperwork at some point during their interaction; Petitioner had no difficulties providing these to Deputy Polizzotti. (R. Tab 5, p. 21.) During his interaction with Petitioner, Deputy Polizzotti asked Petitioner if he had anything to drink that evening. (R. Tab 5, p. 14.) Petitioner initially denied having anything to drink that evening, but he later conceded to having consumed "something" at some point in the day. (R. Tab 5, pp. 14, 15-16, 24.)

Eventually, Deputy Polizzotti requested that Petitioner step outside the vehicle in order to conduct field sobriety tests to ensure Petitioner was okay to drive. (R. Tab 5, p. 14.) Petitioner got out but told Deputy Polizzotti that he would not drive any more that night and did not feel like he needed to do field sobriety testing. (R. Tab 5, pp. 14-15.) Deputy Polizzotti worked to persuade Petitioner to do the field sobriety testing but Petitioner did not relent. (R. Tab 5, p. 15.) Because Petitioner would not agree to do the field sobriety testing, and because Deputy Polizzotti believed – based on his limited exposure to Petitioner – that Petitioner may have been under the influence of intoxicants, Deputy Polizzotti arrested Petitioner in order to conduct a breath test. (R. Tab 5, p. 15.) Deputy Polizzotti brought Petitioner to the Winthrop Police Department, read Petitioner

2

*Miranda* warnings, and read the implied consent form. (R. Tab 5, p. 16.) Despite this, Petitioner would not give a breath sample. (R. Tab 5, p. 16.) After being transported to the Kennebec County Jail, Petitioner was bailed and issued a summons for the Waterville District Court. (R. Tab 6.)

On February 1, 2020, the Bureau of Motor Vehicles issued to Petitioner a notice of suspension and an opportunity for hearing. (R. Tab 8.) Petitioner requested such a hearing regarding his license suspension. (R. Tab 8.) The hearing was eventually held telephonically on August 5, 2020. (R. Tab 3; R. Tab 5, p. 3.) At the conclusion of the hearing, after hearing testimony from Deputy Polizzotti, the hearing officer issued the follow conclusion orally:

> Issue one, I find that there was probable cause to believe that the Petitioner was operating a motor vehicle while under the influence of intoxicants, and I base my decision on the officer's observations of glassy, watery eyes, slurred speech, and asking the Petitioner if he had consumed any alcohol, in which the Petitioner acknowledged that at some point during that day he had consumed some alcohol, and that, in my opinion reaches – is enough to conclude that there was probable cause to believe that he may have been operating under the influence. With regard to number two, I also find that he was informed of the consequences of failing to submit a chemical test as the officer read him the implied consent form prior to conducting or prior to asking him to provide a breath sample to complete the test. With regard to issue number three, did the Petitioner fail to submit to a test, again, based on the evidence that I have and the standard of by a preponderance of the evidence, I'm going to find that the Petitioner did fail to submit to a test. The officer has indicated that he was not able to get a breath sample. There is no reading provided by the readout of Exhibit No. 2, which is the test that evening, which indicates to me that the Petitioner did not provide breath samples to complete the test, so with that, I'm going to uphold the suspension
> . . . .

(R. Tab 5, pp. 30-32.) As highlighted, the hearing officer found three specific facts to support her ultimate conclusion that it was more likely than not that Petitioner operated a motor vehicle while under the influence of intoxicants. Those three facts were (1) the officer observed glass, watery eyes; (2) the officer observed slurred speech; and (3) Petitioner acknowledged

3

consuming something at some point that day.

Respondent attempts to support sustaining the suspension by suggesting that, though not expressly found by the hearing officer, the record contains evidence that Deputy Polizzotti could smell alcohol at the scene. (Resp't's Br. 2.) Deputy Polizzotti expressly testified at the hearing that he did not document in his report that he smelled intoxicants on Petitioner. (R. Tab 5, pp. 22-23.) To highlight this point, the following is the exchange between Petitioner's counsel and Deputy Polizzotti as it pertains to the smell of intoxicants:

MR. MORGAN: And you indicated he had watery eyes and slurred speech. Nowhere in your report do you indicate the smell of intoxicants, correct?

OFFICER POLIZZOTTI: Correct.

MR. MORGAN: And you had a pretty lengthy conversation with him before the field sobriety test requests out of the car, right? You talked with him in his truck, right?

OFFICER POLIZZOTTI: Yes, yes.

MR. MORGAN: And you also arrested him, so he had to get up and do a pat-down of his person, correct?

OFFICER POLIZZOTTI: Yes.

MR. MORGAN: You transported him to the jail for purposes of the — was it APD or where did you do the —

OFFICER POLIZZOTTI: I went to the Winthrop —

MR. MORGAN: Winthrop, okay, sorry about that. You transported him in your cruiser to Winthrop, snowy day with the windows open, right?

OFFICER POLIZZOTTI: Windows closed.

MR. MORGAN: Windows closed, yeah, sorry.

OFFICER POLIZZOTTI: That's all right. Yeah, yeah. No, windows

4

closed.

MR. MORGAN: Yeah. And you did a mouth check you indicate in your report in anticipation of an intox test even though one didn't happen, right?

OFFICER POLIZZOTTI: Correct.

(R. Tab 5, pp. 22-24.) Petitioner's counsel offered Deputy Polizzotti every opportunity to say that he smelled alcohol on Petitioner in the various interactions between Petitioner and Deputy Polizzotti, including riding in a cruiser together with the windows up. Not surprisingly, then, Deputy Polizzotti made no mention of smelling intoxicants in his report. (R. Tab 6.) However, in his affidavit in support of probable cause, Deputy Polizzotti *did* state that he could smell intoxicants coming from inside the vehicle. (R. Tab 6.) The only context in which the affidavit in support of probable cause was discussed pertained to the order in which Deputy Polizzotti would produce the affidavit and the police report:

HEARING OFFICER: Okay. And you write your report up. Approximately how close in time to the time of the event to the time that you write your report?

OFFICER POLIZZOTTI: Usually when it comes to arrests where we bring them into custody, the report – the majority of the report is done right after the arrest because we have to submit the PC affidavit, and then within a couple days, I'll usually clean it up so that it's got all the – everything in there that I need and have everything attached to it, so I'd say within a week everything will be together, but the important details will be in typically that night.

(R. Tab 5, pp. 18-19.) According to his testimony, Deputy Polizzotti would usually draft up the probable cause affidavit and then "clean it up" to reflect his final report. It is not clear if that was the order in which he drafted the documents in this case, but it is the only evidence in the record to explain the difference between the probable cause affidavit and the actual report. Importantly,

5

after hearing Deputy Polizzotti's testimony, the hearing officer did not support her ultimate determination that there was probable cause to believe Petitioner operated a motor vehicle while under the influence of intoxicants with a factual finding that there was a smell of intoxicants. (R. Tab 5, pp. 30-31.)

Respondent highlights authority suggesting that agency decisions can be upheld on the basis of implicit findings in the record. *E.g.*, *City of Old Town v. Expera Old Town, LLC*, 2021 ME 23, ¶ 22, ___A.3d___ (alterations, citations, and quotation marks omitted) ("The Board's findings must be adequate to indicate the basis for the decision and to allow meaningful judicial review. Nevertheless, if there is sufficient evidence on the record, the Board's decision will be deemed supported by implicit findings."). Given how the testimony proceeded before the hearing officer at which she made her ultimate finding regarding probable cause on the record at the conclusion of the hearing, it may be more apt to say that she made an implicit finding that Deputy Polizzotti *did not* smell intoxicants on Petitioner. Because of the presence of the probable cause affidavit in comparison to the unique manner in which the testimony unfolded before the hearing officer before she made her ruling on the record, the Court remands the matter to the hearing officer to make additional findings of fact regarding the presence or absence of the smell of alcohol. *See* 5 M.R.S. § 11007(4)(B).

The entry is:

1. The case is **REMANDED** to the Secretary of State for proceedings consistent with this decision.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 5/25/2021

_____
Hon. M. Michaela Murphy
Justice, Maine Superior Court

6

Date Filed: 09/02/2020    Kennebec    Docket No. AP-20-34
County

**J. Murphy    F**

Action: 80C

Anthony Smith    vs    State of Maine, Matthew
Dunlap

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Kurt Peterson, Esq | |
| Walter McKee, Esq | Donald Macomber, AAG |
| 133 State St | 6 State House Station |
| Augusta, ME 04330 | Augusta, ME 04333 |

Date of Entry

| | |
|---|---|
| 09/02/20 | Petition For Review of Agency Action, filed. s/McKee, Esq. |
| 10/30/20 | Entry of Appearance for the Respondent, Secretary of State, Donald W Macomber, AAG |
| 10/30/20 | Record of Proceedings filed. s/Macomber, AAG |
| 10/30/20 | Notice and Briefing Schedule issued.<br>Notice sent to counsel/parties |
| 12/11/20 | Petitioner's Rule 80C Brief, filed (12/07/20). s/McKee, Esq. |
| 12/29/20 | Respondent's Brief, filed (12/28/20). s/Macomber, AAG |
| 01/06/21 | Petitioner's Rule 80C Reply Brief, filed. s/Peterson, Esq<br>Received via email with Notice of Email Filing and Deadline for Family Matters and Civil Cases |
| 01/08/21 | The Secretary of State is not requesting oral argument so as far as we are concerned The matter can be submitted for decision on the briefs, filed via email (01/06/21) s/Macomber, AAG. |
| 01/08/21 | Counsel for Plaintiff response to email from Donald Macomber, AAG, dated 01/06/21. Works for me, filed via email (01/06/21). s/McKee, Esq |
| 04/22/21 | ORDER SETTING ARGUMENT, Murphy, J.<br>The clerk is directed to to set Zoom oral argument for 5/7/21 at 12:30p.m. and with notice to counsel.<br>Copies mailed to attys of record.<br>Notice of Zoom link sent to attys of record. |
| 05/07/21 | Oral Argument HELD. Murphy, J<br>Under Advisement. |